## GEORGE M. PERRY v. J. E. RUTHERFORD.

### Decided May 20, 1905.

**1.—School Land—Fraud and Collusion—Substitute Purchaser.**

Plaintiff seeking to recover State school land by virtue of a subsequent rejected application to purchase could not avail himself of fraud and collusion in the original purchase as against defendant who, prior to plaintiff's application, had become a substitute purchaser, and who was at that time an actual settler and in all other respects qualified to purchase. Fraud and collusion in the original purchase could only have effected a forfeiture, which would have placed the land again on the market, subject to defendant's prior application, as a substitute purchaser, as against which plaintiff had no superior intervening right.

**2.—Same—Second Application—Waiver.**

The court did not err in refusing to instruct the jury that a second application to purchase was an abandonment or waiver of the applicant's rights under the first.

**3.—Same—Application Before Settlement—Award After Adverse Application.**

It seems that where an applicant to purchase State school land is not an actual settler thereon at the time of filing his application, but becomes such later on the same day and before any intervening rights have attached, this

does not necessarily entitle him to the land where, before it is awarded to him, another makes a proper application to purchase it.

Appeal from the District Court of Roberts. Tried below before Hon. B. M. Baker.

*Ben H. Kelly* and *Wynne, McCart, Bowlin & McCart,* for appellant.

*Willis & Willis* and *Reeder & Cooper,* for appellee.

SPEER, ASSOCIATE JUSTICE.—The appellee as plaintiff below recovered judgment against appellant for certain school lands situated in Ochiltree County. The land in controversy were awarded to Lena Rupprecht February 5, 1902, on her application therefor dated December 30, 1901. On August 6, 1902, she conveyed to A. E. Sullivan, who in turn conveyed to appellant on January 6, 1903, the assignees respectively becoming substitute purchasers in the General Land Office. The appellee made application to purchase as an actual settler on January 3, 1902, and January 30, 1903. These applications were rejected.

Upon the trial, over the objections of appellant, the court permitted the appellee to introduce in evidence certain testimony elicited by cross-interrogatories propounded to the witness A. E. Sullivan, the effect of which constitutes an attack upon his purchase from Rupprecht and sale to appellant because of fraud and collusion. If this issue could in any event be inquired into (Logan v. Curry, 95 Texas, 664, 68 S. W. Rep., 129; Thompson v. Hubbard, 69 S. W. Rep., 649; McBane v. Angle, 69 S. W. Rep., 433, 29 Texas Civ. App., 594; Maney v. Eyres, 33 Texas Civ. App., 497, 77 S. W. Rep., 969; Hamilton v. Votaw, 31 Texas Civ. App., 684, 73 S. W. Rep., 1091; May v. Hollingsworth, 35 Texas Civ. App., 665, 80 S. W. Rep., 842), the same is utterly immaterial in the present case, since if collusion in such particular be shown, its only possible effect would be a forfeiture of the land, again putting it upon the market for sale, and appellee having no superior intervening right, the appellant's application to purchase as a substitute purchaser, he being an actual settler at the time and in all other respects qualified to purchase, would of course take the land. (Johnson v. Bibb, 32 Texas Civ. App., 471, 75 S. W. Rep., 71; Burnett v. Womack, 12 Texas Ct. Rep., 360.) The appellee contends that this testimony was not admitted for the purpose of proving fraud and collusion, but for the purpose of showing whether or not Sullivan, who was originally one of the defendants in the suit, was a purchaser of the land in controversy in good faith as required by the statute governing the sales of State school lands. But what we have said above is also an answer to this contention; besides, we find nothing in the testimony raising the issue of the lack of good faith upon the part of Sullivan in his settlement. The following paragraph of the court's charge is also relied upon as a proper limitation upon the effect to be given this testimony: "You are instructed that all the testimony admitted upon the question of consideration paid or received for the land in controversy was admitted for the sole purpose of assisting the jury, if it does so, to pass upon the question of good faith of the purchaser in settling upon and applying to purchase the land

for a home, and can not be considered for any other purpose." But the jury doubtless understood from this that the issue to which the testimony was thus limited was identical with the question of collusion. And the error in permitting inquiries into these immaterial issues is made more manifest by the refusal of the court to instruct the jury at the instance of the appellant that the question of collusion could not be considered by them for any purpose.

There was no error in refusing to instruct the jury that appellee Rutherford's second application to purchase was an abandonment or waiver of his rights under the first.

A most serious question is presented by the action of the court in refusing to give appellant's requested charge number 5, to wit: "We ask the court to instruct the jury that if they believe from the evidence that said Rupprecht at the time of filing her application was not an actual settler upon said land, but that she afterwards on the same day and before any intervening rights attached did become an actual settler thereon as required by law, and that she and those claiming under her have continued such actual settlement to this date, then to find for the defendant." But a majority of the court are inclined to believe that there was no error in refusing it. In most, if not all, of the cases examined by us wherein a claimant under a premature application has been protected, the award to him was actually made by the Commissioner of the General Land Office at a time when there was no impediment, and prior to the time of the accrual of the rights of the contestant. (Hazelwood v. Rogan, 95 Texas, 295, 67 S. W. Rep., 80; Stewart v. Wagley, 29 Texas Civ. App., 105, 68 S. W. Rep., 297.) The inclination to hold as above indicated is based largely upon the reasoning of the Supreme Court in Hazelwood v. Rogan, supra, wherein it is said: "Let it be conceded for purposes of this opinion, that the lease had not expired on the 26th of August, 1901 (the date of the application). At all events it expired at 12 p. m. of the night of that day. The relator's application could not in the course of business have reached the Land Office and have been acted on until after the termination of the lease. As a matter of fact they were received and filed in that office on the 3d of September, and the lands were not awarded to him until the 20th of that month. Now, if before the award was made, and after the lease had expired, another settler had made application to purchase the lands, we incline to think that such application should be held good. Every qualified person desiring to purchase school lands should have an equal chance in the race of diligence after the expiration of the term, and after the lands were again upon the market for sale; and it would hardly be competent for any one to forestall the right to enter by filing his application before the lease expired." See, also, Ford v. Brown, 96 Texas, 537, 74 S. W. Rep., 535, and Patterson v. Terrell, 96 Texas, 509, 7 Texas Ct. Rep., 358.

For the error in admitting testimony tending to show fraud and collusion in Sullivan's purchase and sale, the judgment is reversed and the cause remanded for another trial.

*Reversed and remanded.*