NO. 07-01-0086-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



MAY 6, 2002



______________________________




BEACH EXPLORATION, INC., APPELLANT



V.



BRADFORD L. MOORE AND McGOWAN & McGOWAN, P.C., APPELLEES




_________________________________



FROM THE 121st DISTRICT COURT OF TERRY COUNTY;



NO. 15,345; HONORABLE MARVIN MARSHALL, JUDGE



_______________________________




Before QUINN and REAVIS and JOHNSON, JJ.

 Beach Exploration, Inc. presents two issues challenging the summary judgment that
it take nothing on its legal malpractice action against Bradford L. Moore and McGowan
& McGowan, P.C. (Moore). By its first issue, Beach contends the trial court erred in
granting Moore's motion for summary judgment on the grounds of limitations because
Beach's cause of action did not accrue within two years of the filing of its lawsuit and the
discovery rule applied to toll the accrual of Beach's claim. By its second issue, Beach
contends that genuine issues of material fact existed as to whether or not the negligent act
of Moore proximately caused damages incurred by Beach. Based upon the rationale
expressed herein, we affirm. 

 Beach, a company engaged in exploration for oil and gas for many years, which
also maintained its own "in-house" division order staff, engaged Moore to examine title to
the southeast quarter of Section One (1) Block C-38, Public School Lands Survey, Terry
County, Texas, in connection with its acquisition of oil, gas, and mineral leases covering
the tract. At the request of Beach, Moore examined title to the property and submitted his
written title opinion dated December 10, 1986, which, as relevant here, failed to advise
Beach of an undivided 75.3904% of 25% of 7/8ths working mineral interest held by Texaco
Exploration and Production, Inc. Relying on the title opinion, Beach acquired oil and gas
leases from parties as shown in the title opinion and drilled and completed four producing
oil wells on the tract. By letter from Texaco USA dated June 1, 1988, to Beach, Texaco
inquired:

 In reference to the above captioned property, Texaco's records do not reflect
a copy of a division order. Please furnish this oflfice with a current division
order or advise purchaser of production. 

 

In response, by its letter of June 13, 1988, Beach advised Texaco: 


 Pursuant to your letter dated June 1, 1988, requesting a Division Order
covering Texaco's interest under the captioned, please be advised that our
title opinion does not show Texaco as an interest owner.

 If you can furnish proper documentation to the contract, please do so and we
will promptly change our records.


Then, in 1993, by letter dated January 22, Texaco Exploration and Production Inc. again
wrote Beach stating its interest and requesting that it furnish Texaco with a copy of its
"payout statements" and division order title opinion. Also, the letter continued:

 Please also furnish this office with your division order covering the subject
lands. Texaco Exploration and Production Inc.'s interest is derived from the
following sequence of events:



 Amerada Petroleum Corporation purchased a 1/4th
mineral interest in the subject lands by Mineral Deed
dated May 17, 1944, recorded in Volume 86, Page 58
of the Deed Records of Terry County, Texas

 Amerada Petroleum Corporation contributed this
mineral interest into a joint working interest unit dated
April 22, 1949, by and between Tide Water Associated
Oil Company, as Operator, and Amerada Petroleum
Corporation, Cities Service Oil Company, and The
Texas Company, as Non-Operator, covering all of
Sections 1, 2 , 8, and 9, Block C-38, PSL, Terry County,
Texas, as to all depths, as long as production continues

 Texaco Exploration and Production Inc. has succeeded
to all of the interest of Tide Water Associated Oil
Company and The Texas Company.


 

By it's petition, Beach alleged that the documents supporting Texaco's interest were duly 
recorded in the official records of Terry County. 

 After the assignment of the mineral interest from Texaco to Robert E. Landreth, his
attorney wrote Amerada Hess Corporation on June 12, 1996, and sent a copy to Beach
advising of Landreth's acquisition of Texaco's interest and made demand for restitution
and accounting. When Amerada Hess and Beach declined the demand, Landreth filed suit
against Amerada Hess and Beach on December 6, 1996, which was settled by agreement
dated August 24, 1998. As its part of the settlement, Beach paid $43,000 to Landreth and
assigned him a one percent royalty in the tract/leasehold. Beach filed the underlying suit
against Moore on September 11, 1998, which was approximately nine and one-half years
after Moore issued the title opinion.

 Following discovery, Moore filed his motion for summary judgment. (1) As his first
ground, Moore contended: 

 Statute of Limitations. Beach's claim is barred by two year statute of
limitations provisions for Tex. Civ. Prac. & Rem. Code, Section 16.003. 
Beach's professional negligence cause of action accrued on June 1, 1988
when it received notice of the adverse interest of Texaco (i.e., legal injury);
or, in the alternative, on January 22, 1993 when Beach again received
notice of Texaco's adverse interest. 


Also, as his second ground, Moore alleged:


 Proximate Causation. The Summary Judgment evidence conclusively
establishes that there is no causal relationship between Moore's preparation
of the Title Opinion and any injury to Beach; or, in the alternative, there is
no evidence to demonstrate any causal relationship between Moore's
preparation of the Title Opinion and any injury Beach. . . .


Before we commence our analysis, we first set out the appropriate standard of review.

Summary Judgment Standard of Review


Rule 166a(c)



 In reviewing a summary judgment, this Court must apply the standards established
in Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985), which
are:

 1. The movant for summary judgment has the burden of showing that there
is no genuine issue of material fact and that it is entitled to judgment as a
matter of law.


 2. In deciding whether there is a disputed material fact issue precluding
summary judgment, evidence favorable to the non-movant will be taken as
true.


 3. Every reasonable inference must be indulged in favor of the non-movant
and any doubts resolved in its favor.

 

 For a party to prevail on a motion for summary judgment, he must conclusively
establish the absence of any genuine question of material fact and that he is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c). A movant must either prove all
essential elements of his claim, MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986), or
negate at least one essential element of the non-movant's cause of action. Randall's Food
Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant has
established a right to summary judgment, the non-movant has the burden to respond to the
motion for summary judgment and present to the trial court any issues that would preclude
summary judgment. City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678
(Tex. 1979); Barbouti v. Hearst Corp., 927 S.W.2d 37, 64 (Tex.App.--Houston [1st Dist.]
1996, writ denied). Where, as here, the summary judgment does not specify or state the
grounds relied on, the summary judgment will be affirmed on appeal if any of the grounds
presented in the motion are meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex.
1989); Insurance Co. Of N. Am. v. Security Ins., 790 S.W.2d 407, 410 (Tex.App.--Houston [1st Dist.] 1990, no writ). (2)

 By its first issue, Beach contends the trial court erred in rendering judgment on the
ground of limitations because its claim did not accrue within two years of the filing of its
lawsuit and the discovery rule applied to toll accrual of its claim. As restated, the issue
requires us to determine whether Beach knew or in the exercise of reasonable diligence
should have known of the existence of its cause of action against Moore.

 The recording of Texaco's interest constituted only constructive notice to Beach of
the existence of Texaco's interest. See Tex. Prop. Code Ann. § 13.002 (Vernon 1984);
Texas Osage Co-Operative Royalty Pool v. Clark, 314 S.W.2d 109, 112 (Tex.Civ.App.-- 
Amarillo 1958), writ ref'd n.r.e, 159 Tex. 441, 322 S.W.2d 506 (1959). However, because
actual notice rests on personal information or knowledge, Madison v. Gordon, 39 S.W.3d
604, 606 (Tex. 2001), when Beach received Texaco's letter of January 22, 1993, setting
out its chain of title and providing recording data, Beach was placed on actual notice of 
Texaco's claim, which as Beach stated in its letter of June 13, 1988, was not disclosed in
the December 1986 title opinion. 

 In general, the discovery rule operates to toll the running of the period of limitations
until the time that Beach discovered or, through the exercise of reasonable care and
diligence, should have discovered the nature of its injury. Moreno v. Sterling Drug, Inc.,
787 S.W.2d 348, 351 (Tex. 1990). As explained in S.V. v. R.V., 933 S.W.2d 1, 6 (Tex.
1996), the discovery rule may be based on cases involving fraud or situations where the
nature of the injury incurred is inherently undiscoverable and the evidence of injury is
objectively verifiable; however, Beach did not allege fraud or that the nature of the injury
was undiscoverable. Although Beach did not contend that an attorney-client relationship
continued after Moore rendered the title opinion, Beach did assert that it did not have
notice of the "nature of" its claim until it settled the suit. However, accrual of a cause of
action is not deferred until the resulting damages have occurred or been determined. S.V.,
933 S.W.2d at 4; Advent Trust Co. v. Hyder, 12 S.W.3d 534, 538 (Tex.App.--San Antonio
1999, pet. denied). 

 The statute of limitations begins to run when the owner of a nonparticipating royalty
interest (1) learns that the defendants have received and are claiming royalty to which he
is entitled, or (2) when he receives information that would lead a person of ordinary
prudence to a discovery of the facts. Andretta v. West, 415 S.W.2d 638, 642 (Tex. 1967).
The time when a cause of action accrues is a question of law, not fact. Holy Cross Church
of God In Christ v. Wolf, 44 S.W.3d 562, 567 (Tex. 2001); Moreno, 787 S.W.2d at 351. 
Assuming that Texaco's letter of June 13, 1988, was not sufficient to put Beach on notice
of the error in the title opinion, a question we need not decide, we conclude Texaco's letter
of January 22, 1993, constituted sufficient notice to lead Beach to discover the facts
regarding the status of the title to the minerals and the alleged negligence.

 Moreover, the term "division order" is a term used in the oil and gas industry to
facilitate the payment to royalty and mineral interest owners for oil and gas production and
sales, and is defined in section 91.401(3) of the Texas Natural Resources Code (Vernon
2001). Also, section 91.402 requires that payment for sales be made within 60 days of the
sale of the production and section 91.404(b) provides that after receipt of a demand for
payment of proceeds, the payor has 30 days after receipt of the notice to pay "or to
respond by stating in writing a reasonable cause for nonpayment." Beach's receipt of the
January 22, 1993 letter documenting Texaco's claim triggered its obligation to exercise
reasonable care and diligence, and had it done so, it would have discovered the facts
essential to its cause of action. Accordingly, Beach's first issue is overruled. 

 Our consideration of Beach's second issue is pretermitted because the summary
judgment does not specify the grounds upon which it is based. Carr, 776 S.W.2d at 569. 
Tex. R. App. P. 47.1. Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice




Do not publish.
1. Although Rule 166a of the Texas Rules of Civil Procedure does not prohibit the
presentation of a combination traditional and no-evidence motion, the better practice is to
file two separate motions. Kelly v. LIN Television of Texas, L.P., 27 S.W.3d 564, 569
(Tex.App.--Eastland 2000, pet. denied). Under Rule 166a(i), the motion must state the
elements as to which there is no evidence. Roth v. FFP Operating Partners, 994 S.W.2d
190, 194 (Tex.App.--Amarillo 1999, pet. denied).
2. Because we affirm based on Moore's first ground, statement of the no-evidence
standard of review is unnecessary.



right to file a
civil action.” Overstreet did not file the underlying suit against Underwood until October 15,
2007. Overstreet’s first issue is overruled.
Chapter 21 Texas Labor Code
           By his first cross-issue, Underwood contends the trial court erred in denying his plea
to the jurisdiction. Concluding that the suit was untimely filed per section 21.254, we agree.
           Alleging violations of chapter 21 of the Texas Labor Code, asserting claims of
harassment and retaliation against her, Overstreet filed suit seeking general and special
damages, as well as exemplary damages and attorney’s fees, costs, and expert fees pursuant
to chapter 21. Among other definitions, as material here, under section 21.002(8), the term
employer may include a county and persons elected to public office. Also, the term
respondent means the person charged in a complaint and “may include an employer.” Id. at
(13). 
            Section 21.201(c) specifies the requisites of a complaint. Among other requirements,
a complaint must state sufficient facts to enable the Commission to identify the respondent,
section 21.201(c)(3), the respondent shall be served within ten days, section 21.201(d), and
a complaint may be amended to cure technical defects or omissions. § 21.201(e). Also,
section 21.202 entitled Statute of Limitations provides that a complaint must be filed with the
Commission not later than the 180th day after the date of the alleged unlawful employment
practice occurred. 
           Section 21.254 of subchapter F entitled Judicial Enforcement provides that within sixty
days from receipt of notice from the Commission of the right to file civil suit, a civil action may
be commenced against the respondent. Under section 21.256, also entitled Statute of
Limitations, a civil action may not be brought later than “the second anniversary of the date
the complaint relating to the action is filed.” Section 21.201(d) requiring service on the
respondent within ten days and other provisions of the chapter demonstrate that the law was
crafted to require that the administrative proceedings and disposition of a complaint proceed
with dispatch and without unnecessary expense and delay.
           Jurisdiction is not presumed when it is solely authorized by statute. Carter, 660
S.W.2d at 866. Moreover, jurisdiction is a question of law and subject to de novo review. City
of Lubbock v. Rule, 68 S.W.3d 853, 856 (Tex.App.--Amarillo 2002, no pet.), overruled on
other grounds, State v. Shumake, 199 S.W.3d 279 (Tex. 2006). Here, Overstreet had the
burden to establish the existence of jurisdiction. Texas Ass’n of Business v. Texas Air Control
Bd., 852 S.W.2d 440, 446 (Tex. 1993); Rule, 68 S.W.3d at 853.
           Underwood contends the notice of right to file suit given pursuant to the first complaint
is controlling, but Overstreet contends that the notice following the second complaint was the
effective notice and that the suit was timely filed. We commence our analysis by first
determining if the notice per the first complaint was controlling for purposes of resolving the
question of jurisdiction.
           Overstreet argues that her first complaint is not controlling because she did not
designate Underwood as an employer. Although section 21.201 requires that a complaint
state “facts sufficient to enable the commission to identify the respondent,” the statute does
not require that the name of the employer be stated in a complaint. Similarly, section 21.254
authorizes a civil action against the respondent. In this context, we use the term respondent
in its broad statutory context to include an employer as among others named therein. See
§ 21.002(13).
 

           Among other allegations, by her first complaint, Overstreet expressly charged that:
I was retaliated against and terminated by Judge Underwood on 1/13/07
effective 1/29/07; and

 
Judge Underwood falsely accused me of improperly touching him and fired me
in violation of the Texas Commission on Human Rights Act, as amended and
Title VII of the Civil Rights Act of 1964, as amended.

 
 
These allegations are not uncertain or vague. To the contrary, they are express allegations
of illegal acts against Underwood. Moreover, they are sufficient to cause the Department to
appoint an investigator and send its notice of March 22, 2007, to Underwood requesting that
he file a Respondent’s Position Statement. After mediation failed and an investigator was
appointed, Overstreet did not amend her complaint as permitted by section 21.201(e). We
conclude that the complaint presented facts sufficient to enable the Commission to identify
Underwood as a respondent as required by section 21.201. Accordingly, we hold that the first
right to file suit notice dated April 26, 2007, is the controlling notice.
           Next, we consider Overstreet’s contentions that the “within 60 days” provision of
section 21.254 is not jurisdictional, but is in effect a limitation statute subject to equitable
tolling. We disagree.
           Unlike sections 21.202 and 21.256 which are entitled Statute of Limitations for
purposes specified, section 21.254 entitled Civil Action by Complainant grants the right to file
a civil action against the respondent within sixty days after the date a notice per section
21.252 is received by the complainant. Overstreet’s contention that section 21.254 is subject
to tolling as a limitation statute is inconsistent with the legislative scheme to expressly identify
a limitation statute as such and is not supported by any authority. Also, section 21.254 is
similar to the forty-day deadline for filing a suit seeking judicial review of a decision of the
Workers’ Compensation Commission per section 410.252(a) which is considered
jurisdictional to an appeal. See Leblanc v. Everest National Insurance Company, 98 S.W.3d
786 (Tex.App.--Corpus Christi 2003, no pet.). 
           Moreover, the term within has various meanings, such as “any time before,” “at or
before,” “at the end of,” “before the expiration of,” and “not later than.” See Glenn v. Garrett,
84 S.W.2d 515, 516 (Tex.Civ.App.--Amarillo 1935, no writ). See also Kramek v. Stewart, 648
S.W.2d 399, 401 (Tex.App.--San Antonio 1983, no writ). 
            We conclude that Overstreet’s first complaint was effective to allow her to file an
action against Underwood and that the suit should have been filed within sixty days after her
receipt of the first right to sue. Accordingly, we hold that this action was not timely filed and
the trial court erred in overruling Underwood’s plea to the jurisdiction.
           Common Law Defamation
           Next, we consider Overstreet’s third issue contending the trial court erred in granting
Underwood’s traditional and no-evidence motions for summary judgment on her nonstatutory-common law defamation claim. As material here, the trial court held that (1) Underwood did
not publish a defamatory statement concerning Overstreet, (2) there was no evidence that any
statement made by Underwood constituted defamation and granted Underwood’s no-evidence
motion for summary judgment. Concluding (1) that the statement did not injure Overstreet in
her profession or occupation, (2) did not impute a crime, (3) did not impute a loathsome
disease, and (4) did not impute sexual misconduct, we agree with the ruling of the trial court. 
           Overstreet’s defamation claim is based on the disclosure by Underwood to the court
reporter with Overstreet present, that his wife had indicated that she had observed instances
of Overstreet’s “improper touching” of Underwood. The adjective “improper” is generally
defined as “not proper, fit or suitable.” See Webster’s New American Dictionary, 1995. The
two words “improper touching” standing alone are not sexually suggestive or otherwise
sensuous. The question before the trial court was not whether the use of the words “improper
touching” was merely a poor choice of words. Rather, the discrete question presented to the
trial court was whether the words were defamatory according to Texas common law.
           Overstreet contends that by innuendo, the statement raises an inference that the
“improper touching” suggested sexual advances. However, where, as here, the statement
cannot properly be construed as ambiguous nor in the ordinary and proper meaning convey
a defamatory interpretation, such meaning cannot be enlarged by claims of innuendo. 
Gartman v. Hedgpeth, 138 Tex. 73, 157 S.W.2d 139,141 (Tex. 1941); ABC, Inc. v. Shanks,
1 S.W.3d 230, 237 (Tex.App.--Corpus Christi 1999, pet. denied). 
           The test for innuendo is not how the plaintiff construes the words but how the statement
would be construed by the average reasonable person or the general public. It is the duty of
the trial court to make the determination and, if in the natural meaning of the statements, they
are not capable of defamatory interpretation, summary judgment is proper. See Simmons v.
Ware, 920 S.W.2d 438, 451 (Tex.App.--Amarillo 1996, no pet.). Moreover by deposition, Mrs.
Underwood stated that her description of “improper touching” was based on her personal
observations at a public reception and other events where she was present. Under such
circumstances, it is not reasonable to imply by innuendo or otherwise, that Overstreet’s
conduct on the occasions when Mrs. Underwood was present, would be considered to be
sexually suggestive or provocative. 
           Moreover, the statement does not suggest that Overstreet was not qualified for her
position or that she was not a good employee, and does not discredit her qualifications,
competency, or work ethic. Indeed, the summary judgment evidence shows that Overstreet
was encouraged to return to work, but she declined to return to her former position. 
           Concluding that (1) the summary judgment evidence established that Underwood did
not publish a defamatory statement, per se or otherwise, (2) there was no evidence that any
statement made by Underwood constituted defamation, per se or otherwise, and (3) there was
no evidence that Overstreet sustained any damages to her reputation, we hold the trial court
did not err in granting the traditional and no-evidence motions for summary judgment and
decreeing that Overstreet take nothing against Underwood. Overstreet’s waiver of her second
issue and this determination pretermits our consideration of all issues not addressed above.
           The judgment of the trial court that Overstreet take nothing against Underwood is
affirmed.
 

Don H. Reavis

                                                                                  Senior Justice